## Boog v. Boog *et al.*

**Fraudulent Conveyance:** TO DEFEAT JUDGMENT FOR ALIMONY:
EVIDENCE. The evidence in this case (see opinion) shows that
defendant, before bringing an action for divorce against the plain-
tiff (his wife), disposed of all his property, in a considerable
amount; that the result of the divorce proceeding was a decree
in the wife's favor upon her cross-petition, and a judgment against
defendant herein for alimony; that soon afterwards defendant
married his co-defendant, to whom certain land was conveyed by
one D.; that the negotiations for the purchase of the land from D.
were carried on by defendant, and that it was paid for with his
money—the proceeds of the property sold by him prior to the
beginning of his divorce suit. *Held* that the conveyance to defend-
ant's wife was for the purpose of placing the land beyond the
reach of the judgment for alimony, and that it should in equity be
subjected to the payment of that judgment.

*Appeal from O' Brien District Court.*—HON. SCOTT M.
LADD, Judge.

FILED, OCTOBER 17, 1889.

ACTION to subject certain lands to the payment of a
judgment for alimony. There was a decree for plain-
tiff, and the defendants appeal.

*D. D. McCallum*, for appellants.

No appearance for appellee.

GRANGER, J.—The plaintiff and the defendant John Boog were husband and wife, and, on the thirteenth day of September, 1886, they were divorced on the petition of the plaintiff in this suit, and she was awarded as alimony the sum of two thousand dollars, besides attorneys' fees and costs. In the divorce proceeding she was defendant, and her relief was upon cross-petition. Before John Boog commenced his divorce suit against the plaintiff in this suit he owned certain lands, which he sold prior to the commencement of such suit to one Nichols, for which he received in money and notes twenty-one hundred dollars, and, in the fall of 1885, he converted his personal property into money and notes, from which he realized a large sum. In the spring of 1887, John Boog married his co-defendant, Gertrude Boog. In April, 1887, and after her marriage to John Boog, one Leroy Dunn conveyed to Gertrude Boog the land in question, for an agreed consideration of thirty-one hundred dollars. There was an encumbrance on the land, which was assumed by the grantee. The only payment to Dunn was the delivery to him of fifteen hundred dollars of notes, which were made by Nichols to John Boog for the land sold by him before the divorce suit. The claim of plaintiff is that the conveyance of the land by Dunn to Gertrude Boog was fraudulent as to her as a judgment creditor of John Boog, and that John Boog is really the owner of the land, and she asks a decree subjecting it to the payment of her judgment. The statement of other facts will be necessary in the consideration of the case.

The only question in the case is, was the land bought by John Boog or his wife Gertrude? Under the theory on which the case is tried the question is to be settled by a finding under the evidence as to which paid for it. Both the testimony and the argument are directed to that point in the case.

The solution of the question to our minds is easy and satisfactory. The agreed facts and the undisputed evidence show that, before John Boog commenced his

divorce suit against the plaintiff, he realized a large amount of money by converting his farm and all his personal property into notes and money. No explanation for such a step is given by him, and, shortly after, he commenced his divorce suit, which resulted in a decree for divorce and alimony in favor of the wife on her cross-petition. Pending this divorce proceeding he paid to the plaintiff, under orders from the court, seven hundred dollars. This is the only disposition of the money or notes received for his property as disclosed in the record. The sale of the property by Boog was in 1885, the decree of divorce in 1886, and the purchase of the property in question in the spring of 1887. At the time of the marriage of Gertrude to John Boog she was recently from the "old country," and could not speak the English language. The negotiations for the purchase of the land were conducted on the part of Gertrude by her husband, one reason assigned therefor being her inability to speak English. Gertrude Boog is not a witness in the case, and the only proof as to her having money in her own right is the statements of John Boog, in his testimony, in which he said his wife had some money. The record affords no means of knowing how much money Mrs. Boog brought from the old country. It seems that after she came here she worked by the week for John Boog. In his testimony he says : "Before I married my present wife I sold out all my stock to her, and quit farming. She was just working for me by the week at that time, and after we were married she bought the land in controversy."

It is undisputed that the only payment made to Dunn on the land was the delivery to him of the fifteen hundred dollars in notes taken by John Boog from Nichols. There is no dispute but that fifteen hundred dollars of such notes were turned over to Dunn. How Mrs. Boog came in possession of the notes does not satisfactorily appear. Boog says he sold the notes at the Union Bank at Sheldon to W. H. Sleeper, and that his wife borrowed seven hundred dollars of one Peck, and bought the notes; that she secured Peck by a mortgage on property he sold her before he married her, and

that he signed the notes with her. He says seven hundred dollars was all she paid for the notes; that the "notes wasn't fifteen hundred dollars then." His testimony shows that he sold all of the notes to the bank, and received eighteen or nineteen hundred dollars for them. In his testimony he does not fix the amount of notes bought for the seven hundred dollars, nor is there anything to show how or where Mrs. Boog obtained the balance of the fifteen hundred dollars of notes turned over to Dunn. Mr. Sleeper is a witness, and testified that neither he nor the bank bought the Nichols notes; but only held them as collaterals to a note of John Boog, and that they were redeemed by John Boog and his wife. There is no harmonizing the statements of John Boog in his testimony. His testimony is desultory, unreasonable in many respects, and manifestly untruthful. One Veeder was the agent for Dunn in the sale of the land. He says in his testimony he sold the land to Gertrude Boog, and then said: "I made a contract with John Boog. He said he wanted the deed made out in his wife's name. He said he couldn't hold property in his own name." This is denied by Boog, but he stands discredited in so many respects that the statement of Veeder must prevail in that respect. A strange feature of the case is that with these discrediting circumstances Gertrude Boog was not made a witness to show at least that she had means to or ever designed to make the purchase. Another fact is that John Boog says that at the time of the decree in the divorce suit, and also at the time of the purchase of the land from Dunn, he had no money or property. In view of other evident misstatements, we are not disposed to credit his statements in this respect, without some explanation of how he has lost the large amount he surely had just prior to the divorce proceeding; and the record is entirely silent in this respect, aside from the payment of the seven hundred dollars as temporary alimony.

There was surely a motive for a fraudulent conveyance, and we think a fraudulent purpose is scarcely less evident. The decree of the district court is right.

AFFIRMED.